S. LANE TUCKER
United States Attorney

JACK S. SCHMIDT
Assistant United States. Attorney
Federal Building & U.S. Courthouse
709 West 9th Street, Room 937
Post Office Box 21627
Juneau, AK 99802
Phone: (907) 796-0400
Fax: (907) 796-0409
Email: jack.schmidt@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CRISTOBAL "CRIS" MAGNO RODRIGO, GLENDA TIGLAO RODRIGO, and CHRISTIAN RYAN TIGLAO RODRIGO d.b.a ALASKA STONE ARTS, LLC., RAIL CREEK, LLC., and RODRIGO CREATIVE CRAFTS,<br><br>　　　　　Defendants. | No. 1:23-cr-00003-TMB-MMS<br><br>COUNT 1:<br>CONSPIRACY<br>　Vio. 18 U.S.C. 371<br><br>COUNT 2:<br>MISREPRESENTATION OF INDIAN PRODUCED GOODS<br>　Vio. 18 U.S.C. §§1159(a) and (b)(1)(A)(i) |

I N F O R M A T I O N

The United States Attorney charges that:

//

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. CRISTOBAL "CRIS" MAGNO RODRIGO ("C.M. RODRIGO") and GLENDA TIGLAO RODRIGO ("G.T. RODRIGO") were joint owners and operators of ALASKA STONE ARTS, LLC. and CRISTOBAL MAGNO RODRIGO was the sole owner of RAIL CREEK, LLC. and both businesses located in Ketchikan, Alaska. G.T RODRIGO was the sole owner of RODRIGO CREATIVE CRAFTS that operated in Concepcion, Tarlac Philippines. CHRISTIAN RYAN TIGLAO RODRIGO ("C.R. RODRIGO"), the son of C.M. and G.T. RODRIGO, was an employee of both ALASKA STONE ARTS, LLC and RAIL CREEK, LLC. who assisted in sales and with G.T RODRIGO day-to-day operation of both store locations in Ketchikan, Alaska, including while located outside of Alaska. All three are of Filipino decent and conspired, with each other and others, to design stone carvings and wood totem poles in the style of Alaska Native designs or styles, manufactured in the Republic of Philippines ("Philippines") with Filipino labor; import the stone carvings and wood totem poles and display, advertise, and sell the stone carvings and totem poles to customers based on false representations that the stone carvings and totem poles were made by Alaska Natives or members of an American Indian tribe.

2. ALASKA STONE ARTS sold a wide range of stone carvings and some wood totem poles. The products were sold as being made by Alaska Native artists and the items sold were crafted based upon traditional Alaska Native designs or styles but were not made by Alaska Natives or members of any American Indian tribe.

3. RAIL CREEK sold a wide range of wood totem poles and some stone carvings. The products sold were sold as made by Alaska Native artists and the items sold were based upon traditional Alaska Native designs or styles but were not made by Alaska Natives or members of any American Indian tribe.

4. RODRIGO CREATIVE CRAFTS was a company created by G.T. RODRIGO in the Philippines. The business was responsible for hiring Filipino employees to produce stone carvings in Alaska Native designs and styles instructed by C.M. RODRIGO. RODRIGO CREATIVE CRAFTS contracted with a Filipino wood carver to supply wood and to carve wood totem poles in Alaska Native designs and styles as instructed by C.M. RODRIGO.

5. J.H.R. was an unindicted conspirator, of Filipino decent, who worked as salesperson and shipper for ALASKA STONE ARTS and RAIL CREEK, who represented and sold stone carvings made in the Philippines as authentic Alaska Native stone carvings made by J.H.R. and others.

6. T.L.M. was an unindicted conspirator, is an Alaska Native and a member of an Alaska Native tribe, who worked as a salesperson exclusively for RAIL CREEK and worked as a salesperson for ALASKA STONE ARTS representing and sold stone carvings and wood totem poles to customers, that were made in the Philippines, as authentic Alaska Native stone carvings made by others and Alaska Native wood totem poles made by T.L.M.

7. S.P.C. was an unindicted conspirator, is an Alaska Native and a member of an Alaska Native tribe, who worked as a salesperson for ALASKA STONE ARTS

represented and sold stone carvings, that were made in the Philippines, as authentic Alaska Native stone carvings made by S.P.C. and others.

8. C.T.L. was an unindicted conspirator, who identifies as an American Indian, who is not a recognized member of an American Indian tribe, who worked as salesperson ALASKA STONE ARTS represented stone carvings and wood totem poles, that were made in the Philippines, as authentic Alaska Native stone carvings made by C.T.L. and others.

## INDIAN ARTS AND CRAFTS ACT

9. The Indian Arts and Crafts Act (IACA) makes it unlawful to offer, display for sale, or sell any good in a manner that falsely suggest that it was Indian produced, an Indian product, or the product of a particular Indian tribe, resident in the United States. 18 U.S.C 1159(a).

10. Congress adopted the IACA as a truth-in-marketing law with the purpose of requiring those who produce and market art and craft work to honestly represent and clarify the degree of Indian involvement in the production of the art and craft work when it is sold, displayed, or offered for sale. 25 C.F.R 309.7

11. Under the IACA, an "Indian" means any individual who is a member of an Indian tribe or certified by an Indian tribe as a non-member Indian artisan. 18 U.S.C. 1159(c)(1) and 25 C.F.R. 309.2 (a). An "Indian artisan" means an individual who is certified by an Indian tribe as a non-member Indian artisan. 25 C.F.R. 309.2 (b). An "Indian product" means any art or craft made by an Indian. The term "made by an Indian" means that an Indian has provided the artistic or craft

U.S. v. Rodrigo et al  4

work labor necessary to implement an artistic design through a substantial transformation of materials to produce the art or craft work. This may include more than one Indian working together, however, the labor component of the product must be entirely Indian for the Indian art or craft object to be an "Indian product." 25 C.F.R. 309.2 (d). "Indian products" include, but is not limited to art made by an Indian in a traditional or non-traditional style or medium, craft work made by an Indian in a traditional or non-traditional style or medium, or a handicraft made by an Indian. 25 C.F.R. 309.2 (2)(i-iii).

12. The following are not considered "Indian product": a product in the style of an Indian art or craft product or designed by an Indian but produced by non-Indian labor; a product in the style of an Indian product assembled from a kit; a product originating from a commercial product, without substantial transformation by Indian artistic or craft work labor; Industrial products that have an exclusively functional purpose which do not serve do not serve as a traditional artistic medium and do not lend themselves to an Indian embellishment; a product in the style of an Indian art and craft product that is produced in an assembly line or related production line using multiple workers not all whom are Indians. 25 C.F.R. 309.2 (3)(i-vi).

13. An "Indian tribe" means any Indian tribe, band, nation, Alaska Native village, or organized group or community which is recognized as eligible for special programs and services provided by the United States to Indians because of their status as Indians; or any Indian group that has been formally recognized as an Indian tribe by a State legislature or by a state commission or similar organization legislatively vested with

U.S. v. Rodrigo et al 5

state trial recognition authority. 25 C.F.R. 309.2 (e)(1)(2); see also 25 U.S.C. 405(b) and 43 U.S.C. 1601 et seq.

## COUNT 1: CONSPIRACY

14. The factual allegations in Paragraphs 1-8 are hereby incorporated by reference and re-alleged herein.

15. Beginning in or about March 2016, and continuing through on or about December 8, 2021, in the District of Alaska, in or near Ketchikan, and elsewhere, defendants CRISTOBAL MAGNO RODRIGO, GLENDA TIGLAO RODRIGO, and CHRISTIAN RYAN TIGLAO RODRIGO, and other known and unknown, conspired with each other and others known, to commit the following offense against the United States:

   a. To knowingly display, offer for sale, and sell for $1,000 and more, stone carvings and wood totem poles, manufactured in the Philippines, in a manner that suggested the stone carvings and wood totem poles were Indian or Alaska Native produced, an Indian and Alaska Native product, and the product of a particular Indian and Alaska Native person and Indian and Alaska Native tribes, resident within the United States, when in truth and in fact, as they well knew and believed, the stone carvings and wood totem poles were not an Indian and Alaska Native produced, an Indian and Alaska Native product, and the product of a particular Indian and Alaska Native and Indian and Alaska Native tribe, in violation of 18 U.S.C. 1159 (Misrepresentation of Indian Produced Goods and Products).

## OBJECT OF THE CONSPIRACY

16. It was the object of the conspiracy for the defendants and their conspirators to unlawfully design and produce in the Philippines with Filipino labor, stone carvings and wood totem poles with Alaska Native designs in order to display, advertise, and sell the stone carvings and wood totem poles to customers based on false representations that the stone carvings and wood totem poles were made by Alaska Natives or members of an American Indian tribe, when in fact, the defendants and others were selling imported stone carvings and wood totem poles that were made by non-Indians or non-Alaska Natives.

## MANNER AND MEANS OF THE CONSPIRACY

17. The manner and means by which the defendants sought to accomplish the objectives of the conspiracy, included, among other things, the following:

   a. Stone carvings and wood totem poles were designed and produced to incorporate Alaska Native designs, styles, and subject matter related to the Tlingit tribe in Southeast Alaska. On or about 2003, C.M. RODRIGO directed G.T. RODRIGO to create RODRIGO CREATIVE CRAFTS "RCC" in the Philippines for the purpose of producing stone carvings and obtaining wood totem poles. Beginning in or about 1998, C.M. RODRIGO went to the Philippines to teach the Filipino carvers how to carve stone in Alaska Native designs and styles. Beginning in or about 2015, another carver in the Philippines was hired and paid through RCC to produce wood totem poles in an Alaska Native design and styles provided by the RODRIGO's to be exported to their business in Ketchikan, Alaska for sale as authentic Alaska Native stone carvings and wood totem

poles.

  b. Typically, the stone carvings produced in the Philippines were engraved with names of artists identifying in particular C.M ("Kilit") or C.R. RODRIGO ("Ryan" or "ЯR") or other employees employed in ALASKA STONE ARTS and RAIL CREEK, who were non-Indians, as well as Indians and Alaska Natives. The wood totem poles that were produced in the Philippines and sold at RAIL CREEK were typically not previously marked identifying the artisan.

  c. The RODRIGO's and their employees represented to customers that the Philippine made stone carvings were authentic Alaska Native produced stone carvings, and falsely represented them to be produced by the non-Indian, Indian or Alaska Native employees of ALASKA STONE ARTS and RAIL CREEK who falsely held themselves or others out as the actual artisans of these stone carvings.

  d. The RODRIGO's and their employees in ALASKA STONE ARTS and RAIL CREEK represented to customers that Philippine made wood totem poles were authentic Alaska Native produced wood totem poles, as made by either non-Indian, Indian or Alaska Native employees of RAIL CREEK who falsely held themselves and others out as the actual artisans of these wood totem poles. Employees misrepresenting themselves as the artisans of the wood totem poles and on occasion signed and dated the wood totem poles as the artisans with black ink markers and took photos with the wood totem poles falsely representing them as authentic Alaska Native produced wood totem poles made by them.

//

U.S. v. Rodrigo et al         8

## OVERT ACTS

18. In furtherance of the conspiracy, and to effect the object thereof, the following overt acts, among others, were committed in the District of Alaska, Ketchikan, Alaska and elsewhere:

19. On or about May 28, 2019, at ALASKA STONE ARTS, S.P.C., an Alaska Native, sold a Philippine produced bear with a fish in its mouth stone carving for $1,435.00, representing that S.P.C. produced the carving and the carving was signed "SC", which identifies S.P.C. as the artisan.

20. On or about July 14, 2019, at ALASKA STONE ARTS, S.P.C., an Alaska Native, sold Philippine produced two dolphins stone carving for $1,600.00, identifying both artists as Alaska Native, which were signed "Kilit" associating C.M. RODRIGO as the artist, and the other was signed "jr".

21. On or about July 22, 2019, at ALASKA STONE ARTS, S.P.C., an Alaska Native, sold a Philippine produced eagle stone carving for $6,435.00 which was signed "Simeon", which identifies S.P.C. as the carver and S.P.C. gifted four other Philippine produced stone carvings as part of the purchase and representing all of the carvings were made by Alaska Natives. The carvings were signed by multiple artists, "Kilit" associated with C.M. RODRIGO, "ЯR" associated with C.R. RODRIGO.

22. On or about July 25, 2019, at RAIL CREEK, T.L.M., an Alaska Native, sold a Philippine produced 5-foot wood totem pole for $2,435.00 after representing that it was made by him as an authentic Alaska Native produced wood totem pole. T.L.M. took a picture with the wood totem pole and signed on the back of the pole indicating that

U.S. v. Rodrigo et al 9

T.L.M. was the carver.

23. On or about August 8, 2019, at ALASKA STONE ARTS, S.P.C., an Alaska Native, and C.R. RODRIGO offered to sell to an undercover law enforcement agent a whale tail stone carving signed by "ЯR" and one two bears stone carving signed by "Kilit" for $7,000. Both S.P.C. and C.R. RODRIGO both misrepresented the carvings as produced by Alaska Natives.

24. On or about August 8, 2019, at ALASKA STONE ARTS, J.H.R. offered to sell to an undercover agent law enforcement agent a Philippine produced bear stone carving by "Kilit" for $2,500. J.H.R. misrepresented the carving as produced by an Alaska Native.

25. On or about August 19, 2019, at ALASKA STONE ARTS, C.R. RODRIGO and T.L.M., an Alaska Native, sold Philippine produced stone carvings, a whale tail stone carving by "ЯR" and a whale stone carving by "jr" for $2,500.00. C.R. RODGRIO identified himself as an Alaska Native artist that carved the whale tail "ЯR", and T.L.M. represented that both carvers were Alaska Native artists.

26. On or about August 28, 2019, at ALASKA STONE ARTS, C.R. RODRIGO sold a Philippine produced salmon stone carving by "Kilit" for $1,935.00 identifying himself as the son of the master carver "Kilit" and as a Native American.

27. On or about September 10, 2019, at ALASKA STONE ARTS, J.H.R. sold to an undercover law enforcement agent, a Philippine produced humpback whale stone carving by "Kilit" and a sea turtle by "Sonny" identifying J.H.R. as the artist for $2,200.00. J.H.R. stated he was the carver of the sea turtle and represented himself and

U.S. v. Rodrigo et al 10

Case 1:23-cr-00003-TMB-MMS   Document 1   Filed 03/13/23   Page 10 of 15

"Kilit" as Alaska Native Tlingits.

28. On or about September 28, 2019, at ALAKSA STONE ARTS, J.H.R. sold to an undercover law enforcement agent, a Philippine produced four bears stone carving signed by "Kilit" for $1,500.00 and J.H.R. identified himself as an Alaska Native Tlingit and represented "Kilit" as his uncle who is an Alaska Native Tlingit master carver.

29. On or about September 28, 2019, at ALASKA STONE ARTS, T.L.M., an Alaska Native, offered to sell undercover law enforcement agents a Philippine produced eagle stone carving signed by "Kilit" for $2,500.00. T.L.M. misrepresented "Kilit" as his uncle who was an Alaska Native Tlingit master carver.

30. On or about March 14, 2021, C.R. RODRIGO, in Kent, Washington, representing ALASKA STONE ARTS, sold a Philippine produced whale tail stone carving signed "Ryan" for $1,600.00 and gifted a bear carving signed "ЯR". C.R. RODRIGO identified himself as the artist and as an Alaska Native Tlingit.

31. On or about March 14, 2021, C.R. RODRIGO, in Kent, Washington, representing ALSAKA STONE ARTS, sold a Philippine produced 4-foot wood totem pole for $3,000.00. C.R. RODRIGO identified T.L.M., an Alaska Native Tlingit, as the carver of the wood totem pole. On June 9, 2021, T.L.M. represented that the wood totem pole previously identified himself as the carver of the wood totem pole and posed in a picture with the totem pole and signed the back of the pole representing himself as the carver.

32. On or about April 28, 2021, C.M. RODRIGO, in Kent, Washington, representing ALASKA STONE ARTS, sold a Philippine produced moose stone carving

U.S. v. Rodrigo et al                            11

signed "Kilit" for $3,000.00 and represented himself as the carver and as an Alaska Native Tlingit; C.M. RODRIGO also sold a Philippine produced whale tail stone carving signed "Simeon" identifying S.P.C., an Alaska Native as the artist for $1,200.00, and a Philippine produced 4-foot wood totem pole identifying T.L.M., an Alaska Native as the artist for $2,000.00.

33. On or about July 2, 2021, at ALASKA STONE ARTS, C.T.L., an American Indian, sold a Philippine produced bear stone carving signed by "Andrew" for $1,600.00 and C.T.L. misrepresented the artist "Andrew" as an Alaska Native artist.

34. On or about July 9, 2021, at ALASKA STONE ARTS, C.T.L., an American Indian, sold a Philippine produced 19-inch wood totem pole for $300.00 after representing T.L.M., an Alaska Native, as the artist who carved the wood totem pole.

35. On or about July 12, 2021, at ALASKA STONE ARTS, C.M. and G.T. RODRIGO sold a Philippine produced bear with salmon stone carving signed by "Kilit" for $1,000.00 and gifted a small standing eagle stone carving signed by "jr". C.M. RODRIGO represented the carvers of the two stone carvings as Alaska Natives.

36. On or about July 15, 2021, at ALASKA STONE ARTS, C.M. and G.T. RODRIGO sold a Philippine produced salmon stone carving signed by "Kilit" for $1,600.00 and gifted a humpback whale stone carving signed by "Sonny" and represented the carvers of the two stone carvings as Alaska Natives.

37. On or about August 8, 2021, at ALASKA STONE ARTS, C.T.L., an American Indian and T.L.M., an Alaska Native, sold a Philippine produced two sea turtles stone carving for $1,870.00 and gifted a small sea turtle stone carving that C.T.L.

U.S. v. Rodrigo et al                    12

and T.L.M represented were carved by an Alaska Native.

38. On or about August 8, 2021, at ALASKA STONE ARTS, C.T.L., an American Indian and T.L.M., an Alaska Native, sold to an undercover agent law enforcement agent, a Philippine produced 22-inch wood totem pole for $1,500.00 that T.L.M represented he was the carver of the wood totem pole and signed in black marker with his name and the month/year that he made the wood totem pole as an Alaska Native artist. During that same contact, C.T.L. offered to sell to the undercover agent, a Philippine produced black bear and a dancing bear stone carvings signed by "jr" for $1,500.00 representing that "jr" was an Alaska Native artist. C.T.L. and T.L.M. represented each other as Alaska Native cousins and master carver "Kilit" as their uncle.

39. On or about August 26, 2021, at ALASKA STONE ARTS, S.P.C., an Alaska Native and C.T.L., an American Indian, sold a Philippine produced a whale tail, a kayak hunter, and a humpback whale stone carvings signed by "Kilit" for $4,435.00 with S.P.C. and C.T.L. representing themselves as Alaska Natives and the artist "Kilit" as their uncle, an Alaska Native carver, who produced the carvings locally in Ketchikan.

40. On or about August 27, 2021, at ALASKA STONE ARTS, S.P.C., an Alaska Native and C.T.L., an American Indian, sold a Philippine produced bear with an eagle on its back stone carving signed by "Kilit" for $1,371.19 and S.P.C. represented that the artist "Kilit" as an Alaska Native family member.

41. On or about August 29, 2021, at ALASKA STONE ARTS, S.P.C and T.L.M., are Alaska Natives, who sold a Philippine produced humpback whale stone carving signed "Simeon" with S.P.C. represented as an Alaska Native artist, for

U.S. v. Rodrigo et al 13

$3,000.00. S.P.C. and T.L.M. gifted a Philippine produced unsigned bear, two small bear stone carvings signed "ЯR", and a standing eagle carving signed "Cameron." S.P.C. and T.L.M. represented that all the stone carvers were local Alaska Natives artists that were related to them. T.L.M. sold a Philippine produced bear with a fish in its mouth stone carving signed by "Kilit" for $3,200.00 and represented the carver as an Alaska Native artist.

42. On or about September17, 2021, at ALASKA STONE ARTS, T.L.M., an Alaska Native, sold to an undercover agent a Philippine produced 22-inch wood totem pole for $1,200.00 and gifted a 12-inch and a 11-inch wood totem poles and signed the 22-inch wood totem pole with his name in black marker with the month/year it was made by T.L.M. as the carver and that all the carvers in the business were T.L.M. Tlingit relatives who made the wood totem poles. T.L.M sold a Philippine produced 3-inch bear stone carving for $50.00 signed "jr" representing the carver as an Alaska Native.

## COUNT 2

43. Paragraphs 1-8, 17, and 19-42 are re-alleged and incorporated herein.

44. Between in or about March 2016 through December 8, 2021, the defendants, CRISTOBAL MAGNO RODRIGO, GLENDA TIGLAO RODRIGO, and CHRISTIAN RYAN RODRIGO, doing business as, ALASKA STONE ARTS, LLC., RAIL CREEK, LLC., and RODRIGO CREATIVE CRAFTS, within the District of Alaska and elsewhere, did knowingly offer and display for sale and sell goods, specifically stone carvings and wood totem poles not made by an Alaska Native, in a manner that falsely suggested these goods as being Indian produced and Indian products,

U.S. v. Rodrigo et al                  14

in particular that they were authentic Alaska Native carvings, knowing that they were not.

All of which is in violation of Title 18, United States Code, §§1159 (a) and (b)(1)(A)(i).

RESPECTFULLY submitted on March 10, 2023, at Juneau, Alaska.

S. LANE TUCKER<br>
United States Attorney<br>
<br>
s/ *Jack S. Schmidt*<br>
JACK S. SCHMIDT<br>
Assistant United States Attorney<br>
United States of America